# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE LAWRENCE CLEGG, | : | CIVIL NO. 1:CV-08-2326 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| RAYMOND J. SOBINA, | : | |
| Respondent | : | |

## MEMORANDUM

Before the Court is Petitioner George Lawrence Clegg's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition Clegg challenges his 2004 conviction in the Court of Common Pleas of York County, Pennsylvania, for aggravated assault and fleeing and attempting to elude police. He was sentenced, following a jury trial, to a twenty-seven (27) to fifty-four (54) month term of imprisonment. He has since been paroled from this sentence. In the petition, he raises four (4) grounds alleging the ineffective assistance of counsel. The petition is ripe for consideration and, for the reasons that follow, will be denied.

I.   **Background**

The relevant factual background of this case, as extracted from the November 19, 2008 opinion of the Pennsylvania Superior Court denying Clegg's petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, is as follows:

> In August of 2001 Nancy Wilson ("Wilson"), [who was] [Clegg's] fiancé, contacted the Springettsbury Township Police Department to report that [Clegg] was missing, as was [Wilson's] van. She informed Officer Brian Alu that she believed [Clegg] was suicidal; she had found ties bound together as though [Clegg] was planning to hang himself and reported that [Clegg] was not taking his depression medication, Prozac. Officer Alu entered [Clegg's] information into the NCIC database as an "endangered missing person." About one hour after Office Alu left [Wilson's]

residence, [Wilson] decided to report her van as stolen.

In the early morning hours of August 24, 2001, Officer Joseph Jones of the Northern York County Regional Police Department noticed a van weaving over the centerline on North George Street. When a traffic signal in front of the van turned red, the van stopped well in front of the designated stop line, so much so that it was interfering with traffic traveling through the intersection. Officer Jones noticed that the van's driver yelled at one of the drivers traveling the other direction as the other driver drove around the van.

At this point, Officer Jones activated the signal lights on his marked patrol car in an attempt to indicate that the van should pull over as soon as it was able. The van then crossed all three lanes of traffic, moving from the far left to the far right. Upon stopping again, the driver yelled something at Officer Jones, who replied that the driver was to stop in a nearby McDonald's parking lot.

When the vehicle pulled into the McDonald's lot, Officer Jones relayed the vehicle's license plate number over the radio. As he was doing so, Sergeant David Steffen, also of the Northern York Regional Police Department, entered the plate number into the NCIC [National Crime Information Center] database in his marked vehicle. The information that Officer Alu had previously entered appeared, indicating that the driver may be an endangered missing person who was possibly suicidal. Sgt. Steffen immediately relayed this information to Officer Jones, who was approaching the van. Sgt. Steffen then proceeded to drive to the McDonald's lot.

Upon receiving Sgt. Steffen's transmission, Officer Jones drew his weapon. He ordered the driver, [Clegg], to show his hands. [Clegg] refused to comply and told Officer Jones that he had a gun and was going to kill somebody. After a few moments of Officer Jones trying to convince [Clegg] to comply, [Clegg] put the van into gear and fled the scene. Sgt. Steffen, who had arrived on the scene shortly after Officer Jones's initial approach, attempted to pepper spray [Clegg] as he sped off, but the spray either did not contact [Clegg] or did not inhibit him from driving away.

[Clegg] traveled on several roads throughout central and eastern York County, many of them twice. He drove approximately 10-15 miles per hour over the speed limit the entire time and did not stop for any of the several stop signs or red lights he encountered. [Clegg] was consistently swerving from one side of the road to the other. Occasionally, [Clegg]

drove over curbs, through grass, and through various commercial parking lots. At one point, between six and nine cruisers were involved in the chase.

Eventually, while traveling on Sherman Street, a State Police cruiser driven by Trooper Robin Feiser drove alongside [Clegg's] van. [Clegg] then braked, and pulled his vehicle slightly to the right as they were approaching a curve in the road. The cruiser hit the end of the guardrail, but neither Trooper Feiser nor Trooper Earl Eshleman, who was also in the cruiser, was injured. [Clegg's] van spun and was now facing the opposite direction. [Clegg] continued north on Sherman Street, turned onto U.S. 30, and then traveled south on North Hills Road.

Stop sticks, also known as spike strips, were deployed in North Hills Road and [Clegg] drove over them near the ramp to get onto Interstate 83. The van never merged with traffic, as the tires deflated near the Belmont Street exit, where [Clegg] finally crashed into the guardrail. Upon arriving at the scene, Officer Jack L. Graybill, II ("Graybill") of the Spring Garden Township Police Department, and Sgt. Steffen approached the passenger side of the van. Both officers testified that upon looking into the front passenger's side window, they saw a rifle or shotgun pointed in their direction. Once again, [Clegg] ignored the officers' orders to disarm himself and get out of the van.

Meanwhile, Officers James A. Miller and Eisenhart of the Springettsbury Township Police Department balanced themselves on the guardrail so they could approach the vehicle from the driver's side. The window was down and Officer Eisenhart began trying to pull [Clegg] out of the van.

On the other side of the van, Officer Graybill smashed the passenger's window with his baton and opened the door. At this point [Clegg] pointed the gun in the direction of Officer Graybill. Officer Graybill maced [Clegg], at which point [Clegg] was disarmed. [Clegg] reached for a second gun that was lying on the floor of the van and was disarmed again. Sgt. Steffen handed one of these guns to Officer Jones so it could be secured.

Officers Eisenhart and Miller then pulled [Clegg] out of the vehicle on the driver's side. Given the late hour of this incident and the speed at which these events progressed, Officers Eisenhart and Miller did not realize that they were actually on the edge of a small bridge or overpass. The force of removing [Clegg] from the

3

> van caused the officers and [Clegg] to fall approximately fifteen feet to the ground below. After landing on top of the officers, [Clegg] fled on foot. Officers Miller and Eisenhart tackled [Clegg], finally taking him into custody.
>
> The chase lasted twenty-seven minutes. Officers Jones and Graybill, as well as Sgt. Steffen, all testified that they believed someone was going to be shot and/or that they would have to shoot [Clegg] during the struggle in the van.

(Doc. No. 1-2 at 16-19, Commonwealth v. Clegg, 1573 MDA 2007 (Pa. Super. Nov. 19, 2008)).

On May 13, 2004, following a jury trial, Clegg was found guilty of Aggravated Assault and Fleeing and Attempting to Elude Police in the York County Court of Common Pleas. On September 17, 2004, he was sentenced to 27-54 months in a state correctional institution on the Aggravated Assault charge, and a concurrent term of twelve (12) months probation and a $500.00 fine on the Fleeing charge. He was additionally found guilty of summary offenses for which fines were imposed.

Following the reinstatement of his direct appeal rights, an appeal was filed in the Pennsylvania Superior Court on August 10, 2005.[1] On May 8, 2006, his conviction and sentence were affirmed. See Commonwealth v. Clegg, 903 A.2d 42 (Pa. Super. 2006). The Pennsylvania Supreme Court thereafter denied Clegg's petition for Allowance of Appeal on February 14, 2007. See Commonwealth v. Clegg, 591 Pa. 659, 918 A.2d 142 (2007).

On May 2, 2007, Clegg filed a petition seeking post conviction relief ("PCRA"). On August 24, 2007, following a hearing, the PCRA petition was denied. The Pennsylvania

---

[1] In the direct appeal Clegg alleged that (1) the lower court erred in denying his motion to suppress the physical evidence and statements obtained as a result of the initial stop in the McDonald's parking lot since Officer Jones did not have a reasonable and articulable basis for stopping his vehicle and (2) the evidence was insufficient to prove the element of physical menace necessary to support a conviction for aggravated assault.

4

Superior Court affirmed the denial of the PCRA petition on November 19, 2008. No appeal was taken to the Pennsylvania Supreme Court. The instant federal habeas corpus petition was filed on December 3, 2008. In the petition, Clegg raises the following grounds for relief:

> (1) Ineffectiveness of trial counsel for advising Defendant not to testify on his own behalf;
>
> (2) Ineffectiveness of trial counsel for conceding Defendant's guilt to fleeing and eluding police during the opening and closing arguments without his consent;
>
> (3) Ineffectiveness of trial counsel for failing to interview Defendant before trial to determine whether to call Officer Eisenhart as a witness at trial; and
>
> (4) Ineffectiveness of trial counsel in failing to investigate and present evidence of such police fabrication/use of perjured testimony by police officers at trial.

(Doc. No. 1, Pet. at 6-13.)

## II. Standard of Review

28 U.S.C. § 2254 provides that a person in custody pursuant to the judgment of a state court may apply for a writ of habeas corpus if the custody was imposed in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To exhaust state court remedies, the petitioner must "fairly present" all federal claims to the highest state court before bringing them in federal

court.[2] Stevens v. Delaware Correctional Center, 295 F.3d 361, 369 (3d Cir. 2002)(citing Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002)). The exhaustion requirement may be excused, however, "if requiring exhaustion would be futile, i.e., exhaustion is impossible due to procedural default and state law clearly forecloses review of the unexhausted claim." Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000)(citing Lambert v. Blackwell, 134 F.3d 506, 513 (1997)). If such a state procedural default has occurred, the court still may not consider the merits of the claims unless the petitioner establishes cause for the procedural default and prejudice or a fundamental miscarriage of justice. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).

Each of the ineffective assistance of counsel grounds raised in the instant petition were pursued by Petitioner in his PCRA petition denied by the York County Court of Common Pleas. Petitioner thereafter pursued an appeal to the Pennsylvania Superior Court raising the same grounds, and was unsuccessful. It is thus clear that Petitioner's claims are exhausted.

If a habeas petitioner's claim was "adjudicated on the merits" in state court, "the petition may not be granted unless the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Simmons, 581 F.3d at 165, citing 28 U.S.C. § 2254(d)). A decision is contrary to Supreme Court precedent "if the state court reached a

---

[2] Pennsylvania Supreme Court Order No. 218 removes review of criminal and collateral appeals in the Pennsylvania Supreme Court from normal and established appellate review procedure in Pennsylvania. Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004). As such, petitioners are not required to seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a "full opportunity to resolve any constitutional claims." Id.

6

conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." Fahy v. Horn, 516 F.3d 169, 189 n. 20 (3d Cir. 2008)(quoting Shelton v. Carroll, 464 F.3d 423, 436-37 (3d Cir. 2006)). An unreasonable application of clearly established law occurs where the state court: "(1) unreasonably applies the correct Supreme Court precedent to the facts of a case; or (2) unreasonably extends or refuses to extend that precedent to a new context where it should (or should not ) apply." Id.; see also McMullin v. Tennis, 562 F.3d 231, 236 (3d Cir. 2009), cert. denied, 130 S. Ct. 72 (2009). "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)(cited cases omitted).

In this case Petitioner contends that trial counsel violated his Sixth Amendment right to counsel by providing ineffective assistance of counsel, a claim governed by standards established in Strickland v. Washington, 466 U.S. 668 (1984). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, ___ U.S. ___, ___, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). Thus habeas review of a Strickland claim is "doubly deferential." Id. at ___, 129 S.Ct. at 1420.

Strickland sets forth a two-prong test to establish ineffective assistance of counsel. First, counsel's performance must be deficient. Trial counsel's representation must have fallen "below an objective standard of reasonableness considering all the circumstances." Jacobs, 395 F.3d at 102 (citing Strickland, 466 U.S. at 687-88.) "Counsel's reasonableness must be assessed on the

7

facts of the particular case, viewed as of the time of counsel's conduct." Id. Second, counsel's deficient performance must have prejudiced the defense. Id. (quoting Strickland, 466 U.S. at 689.) A petitioner must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 105 (quoting Strickland, 466 U.S. at 687.) A petitioner "need not show that counsel's deficient performance 'more likely than not altered the outcome in the case' - rather, he must show only 'a probability sufficient to undermine confidence in the outcome' " Id.

### III. Analysis

In analyzing Petitioner's ineffective assistance of counsel claims, the Pennsylvania Superior Court relied on the standard set forth in Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987), and Commonwealth v. Perry, 2008 WL 4193066, *2 (Pa. Super. filed Sept. 15, 2008). This standard provides that when considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct and (3) Defendant was prejudiced by counsel's action or omission. All three prongs of this inquiry must be met to establish an ineffective assistance claim. Although the Pennsylvania Superior Court relied on state law dealing with Petitioner's ineffectiveness claims, that law is "not contrary to Strickland." Jacobs, 395 F.3d 92, 106 n. 9 (3d Cir. 2005). Hence, the relevant question here is whether the Superior Court's decision with respect to Petitioner's ineffective assistance claims involved an unreasonable application of Strickland. Id. The Court will now address each of Petitioner's claims with this framework in mind.

### A. Ineffectiveness of trial counsel for advising Petitioner not to testify on own behalf

Petitioner asserts that his trial counsel was ineffective for advising him not to testify at trial on his own behalf. Petitioner claims he wanted to testify to counter fabricated testimony police gave during the trial, and also to show that he fled from police due to the duress he was under from fear of police brutality. Specifically, he claims that he fled from officers because he feared police brutality. Petitioner states that when he attempted to discuss this trial strategy with trial counsel, counsel stated that he would investigate. On several later occasions counsel informed Petitioner to "let him do his job," and that he would not stress a claim that officers committed perjury.

At the PCRA hearing trial counsel testified that he advised Petitioner not to testify because Petitioner had a prior crimen falsi conviction for burglary, and he believed this information would adversely affect the jury's perception of Petitioner. (Doc. No. 14, PCRA Hr'g Tr. at 33-34.) Trial counsel further testified that his strategy was to "pit the officers" against each other in order to impeach their credibility, particularly since trial counsel believed not all the officers were being truthful. (Id. at 30, 36, 41.) Trial counsel also testified that the defense of police misconduct does not sit well with jurors in that area, and also as to the difficulty of putting a defendant on the stand to point the finger at the police. (Id. at 47.) Trial counsel concluded that the jurors did not like all of the police officers and were able to conclude the officers were lying without Petitioner taking the stand. He claims that Petitioner's acquittal on numerous other charges supports this belief. (Id. at 47-49.) In addition, trial counsel noted that the trial court conducted the colloquy of Petitioner. Therein, Petitioner indicated that he had discussed with trial counsel the issue of whether he should testify, and that he was voluntarily

waiving his right to testify. (Id. at 32-33.)

The Superior Court concluded that the foregoing provided a "reasonable basis" for trial counsel's conduct, and rejected Petitioner's ineffectiveness claim. It found that Petitioner was fully aware of the decision to forego testifying, that Petitioner was fully able to comprehend trial counsel's advice and that he did not wish to testify. The court noted the extensive colloquy in the record regarding Petitioner's waiver of his right to testify, and how Petitioner had stated that trial counsel had discussed the pros and cons of testifying.

This Court concludes that based on the record, the Superior Court's ruling does not involve an unreasonable application of Strickland's first prong, which requires us to examine the circumstances confronting counsel at the time he advised Petitioner not to testify. The strategic decision was based upon trial counsel's knowledge and experience regarding how the jury would have reacted to Petitioner's duress defense and to Petitioner's prior crime involving dishonesty. In addition, the Superior Court took into account the extensive colloquy conducted by the trial court with respect to Petitioner's waiver of the right to testify. For these reasons, this Court will not disturb the Superior Court's ruling given our narrow standard of review - whether the ruling was a reasonable application of the Strickland standard.

**B.    Ineffectiveness of trial counsel in conceding Petitioner's guilt to fleeing and eluding police during the opening and closing arguments**

Petitioner claims that trial counsel was ineffective for conceding guilt to the offense of fleeing and eluding police without first obtaining Petitioner's consent. He maintains that the concession by counsel of his guilt to this charge in the opening and closing statements amounts to the entry of a guilty plea without his consent. He argues that counsel's actions were

10

presumptively prejudicial, and as such, he is relieved of proving the actual prejudice element of an ineffective assistance claim. In support of his argument he relies on United States v. Cronic, 466 U.S. 648 (1984), wherein the United States Supreme Court found that in certain situations counsel's inadequacy is of such a quality that prejudice is actually presumed. However, in addressing this claim of ineffectiveness in Petitioner's PCRA appeal, the Pennsylvania Superior Court relied on the Strickland/Pierce paradigm for reviewing Petitioner's ineffective assistance of counsel claim. In so doing, the Superior Court cited to a later United States Supreme Court case, as well as precedent from the Pennsylvania Supreme Court, which found that Cronic's presumed prejudice exception was narrow and that a showing of actual prejudice was required where counsel conceded the defendant's guilt. See Florida v. Nixon, 543 U.S. 175 (2004); Commonwealth v. Cousin, 585 Pa. 287, 888 A.2d 710 (2005); Commonwealth v. DeHart, 539 Pa. 5, 650 A.2d 38 (1994). In these cases, the courts did not assume that defense counsel was per se ineffective and, instead, focused on whether counsel's tactical decision of admitting guilt, in view of the circumstances of the case, constituted effective assistance. The focus was on whether the strategic decision to concede guilt amounted to a complete failure by trial counsel to subject the state's case ". . . to adversarial testing as contemplated by Cronic and its progeny." Cousin, 585 Pa. at 296-303, 888 A.2d at 715-20.

   This Court does not find the Pennsylvania Superior Court's decision to evaluate Petitioner's claim under the Strickland/Pierce performance-and-prejudice standard as opposed to a per se ineffective application to be unreasonable under the circumstances of this case for the following reasons. While it is true that counsel did not expressly apprise Petitioner of his proposed strategy, it cannot be concluded that this omission was the "failure to function in any

11

meaningful sense as the Government's adversary" and did not result in an actual or constructive denial of counsel. As such, the Court will now address Petitioner's ineffective assistance claim regarding trial counsel's concession of guilt without Petitioner's express approval under the Strickland/Pierce performance-and-prejudice standard.

At the PCRA hearing trial counsel testified that while he did not necessarily recall asking Petitioner prior to making the admissions about whether he should do so or not. However, he employed the strategy of conceding Petitioner's guilt on the fleeing or attempting to elude offense in order to avoid Petitioner being convicted on all of the aggravated assault charges, which arose out of the fleeing or attempting to elude criminal episode. (Doc. No. 14, Tr. at 34, 53.) Counsel states he made this strategic decision in an effort to get Petitioner acquitted of the major felonies against him. "Fleeing" went with trial counsel's theory of the case that Petitioner was depressed, had no intent to harm the police and was trying to get away to harm himself. (Id. at 46.) Trial counsel further testified that because so many police officers were going to testify, as both professional witnesses and victims, and assuming the jury would tend to believe them, Petitioner faced conviction of multiple aggravated assaults. Counsel further believed that there was no viable defense to the fleeing or attempting to elude charge. (Id. at 52-54.) However, because as a crime itself fleeing did not carry a big penalty, counsel felt that his strategy to get the jury to convict Petitioner of a lesser charge in exchange for an acquittal on the more serious charges was in the best interests of his client. As it turns out, the strategy was successful. (Id. at 34.)

Assessing counsel's decision to concede guilt on the fleeing and attempt to elude crime under the particular facts of this case, it cannot be said that the Superior Court's ruling on this

12

ineffectiveness claim involved an unreasonable application of Strickland. The record supports a reasonable, strategic basis for counsel's concession of guilt for the purpose of serving the best interests of Petitioner. As expected by trial counsel, the testimony of several officers at trial established a twenty-seven (27) minute pursuit of Petitioner which included Petitioner's fleeing the scene after the initial stop by Officer Jones, and thereafter driving over the speed limit and through traffic signals. Once Petitioner was forced to stop when his tires were deflated due to spike strips that had been deployed, and he was pulled from the vehicle, he again attempted to flee on foot. In addition to this evidence, conceding to the fleeing and eluding was part of trial counsel's theory of the case. For these reasons, this Court will not disturb the Superior Court's decision ruling deeming counsel's assistance as constitutionally effective.

      **C.**    **Ineffectiveness of trial counsel for failing to interview Petitioner before trial to determine whether to call Officer Eisenhart as a witness at trial**

According to Petitioner, if trial counsel had not failed to interview him before trial, a determination could have been made as to whether to call Officer Eisenhart as a witness to corroborate Petitioner's version of events that he never pointed a rifle at Officer Graybill during his arrest. Eisenhart's testimony would also have served the purpose of contradicting Graybill's testimony regarding Petitioner pointing a gun at him. In failing to interview Petitioner and make the determination to call Eisenhart, Petitioner claims that trial counsel was ineffective.

At the trial, Officer Graybill testified as to his involvement in the car chase and the apprehension of Petitioner. His testimony consisted of having approached the passenger side of Petitioner's vehicle following the crash, looking in the window and observing Petitioner with a rifle in his hand. He states that Officer Eisenhart was on the driver's side of Petitioner's vehicle

13

standing on the guardrail, and giving commands to Petitioner. As Eisenhart approached the vehicle, Graybill testified that Petitioner turned back with the gun and his head in Graybill's direction. According to Graybill, the barrel of the gun was pointed in Graybill's direction. Graybill states that he sprayed mace into the trunk compartment. Afterward, Eisenhart reached through the driver's door, and grabbed a hold of Petitioner. Petitioner turned his head and, at that point, Graybill removed the gun from his hands. (Doc. 1, 11/19/08 Pa. Super. Ct. Op. at 24-25.)

While Eisenhart did not testify at the trial, he did testify at the PCRA hearing. He stated that when Petitioner's vehicle came to a rest, he pulled in behind him. As he approached the vehicle from the driver's side he had to get up on the guardrail due to the close proximity of the vehicle to the guardrail. He stated that if pepper spray was used, he never sprayed any or smelled it. He further testified that he was positioned back from the driver's window, and was primarily focused on trying to open the door. While he does not recall seeing a gun, he testified that he could not see inside the van at all or see Petitioner's hands. (Doc. No. 14, PCRA Tr. at 6-10, 13.) The entire incident at the vehicle from the time Eisenhart approached until the time he pulled Petitioner out and fell over the embankment was a matter of seconds. He reiterated in his testimony at the PCRA hearing that he could not really see Petitioner due to Eisenhart's tight positioning on the driver's side of the car that was pinned up against the guardrail. Eisenhart states that he was so focused on Petitioner that he did not even realize that other officers, including Officer Graybill, were on the passenger side of the Petitioner's vehicle until after the incident. (Id. at 13.)

In addressing this ineffective assistance of counsel claim, the Pennsylvania Superior

14

Court first found that the record supported the facts that trial counsel did meet with Petitioner several times before trial. Further, while counsel testified at the PCRA hearing that he could not remember whether he interviewed Officer Eisenhart prior to trial, he did review all of the discovery information related to him which revealed what Eisenhart would have testified to if called at trial as a witness. (Id. at 37.) This testimony would have consisted of the facts that Eisenhart could not see what Petitioner was doing inside of his vehicle due to Eisenhart's positioning, and therefore would be unable to contradict Graybill's testimony regarding the gun. Thus, the Superior Court rejected the ineffectiveness claim on the basis of counsel's strategic decision not to call Eisenhart to testify that he could not see anything, and rather, to attack the credibility of Officer Graybill who did have a view into the vehicle. The Superior Court concluded that Petitioner was clearly not prejudiced by any failure on trial counsel's part not to interview Eisenhart, since he admitted that he could not see insider the van or observe what Petitioner or other officers may have been doing.

Without unnecessary elaboration, this Court concludes that the Superior Court's ruling does not involve an unreasonable application of Strickland. Counsel knew what Eisenhart's testimony would be if he testified, and this was confirmed in the PCRA hearing. Eisenhart was unable to see anything, and therefore clearly unable to contradict Graybill's testimony or lend corroboration to Petitioner's version of the events. Counsel's decision cannot be found to be unreasonable under the circumstances confronting him at the time he made his decision, and his strategy of attempting to discredit Officer Graybill proved successful, as Petitioner ultimately was acquitted of the most serious charges against him.

### IV. Ineffectiveness of trial counsel for failing to present evidence of police fabrication

Petitioner asserts that trial counsel was ineffective for failing to investigate and present evidence that several police officers presented perjured testimony at the trial. Petitioner specifically refers to testimony given that he pointed a gun at Officer Graybill. He contends that counsel's failure to investigate and present Officer Eisenhart's testimony at trial which could have exonerated him on this point was ineffective assistance of counsel.

For the same reasons previously discussed, it was not unreasonable for the Superior Court to find that trial counsel had a reasonable strategic basis for declining to call Eisenhart as a witness. None of the testimony offered by Officer Eisenhart at the PCRA hearing suggests any fabrication on the part of the other police officers who testified at trial, or demonstrates any contradiction. Eisenhart's testimony establishes, at best, that he was in a different position than the other officers at the relevant time, and was unable to see what did or did not occur in the van. In addition, trial counsel also had concerns through his knowledge and experiences about alleging police misconduct and fabrication in the area where the case was to be tried, where jurors tended to believe police officers. The foregoing all played into his decision not to advance a defense of police fabrication which he felt would be unsuccessful. The Court cannot say that the Pennsylvania Superior Court's rejection of this claim of ineffectiveness is unreasonable in light of the record. Given this Court's narrow standard of review - it follows that the Superior Court's ruling was a reasonable application of the <u>Strickland</u> standard, and Petitioner's final claim is found to be without merit.

### IV. Conclusion

For all of the foregoing reasons, the Court will issue an appropriate order denying the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The order will also deny a certificate of appealability, based on the analysis in this Memorandum. However, Petitioner is advised that he has the right for thirty (30) days to appeal this order denying his § 2254 petition, see 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that this Court's denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the appropriate court of appeals. See Fed. R. App. P. 22.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE LAWRENCE CLEGG, | : | CIVIL NO. 1:CV-08-2326 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| RAYMOND J. SOBINA, | : | |
| Respondent | : | |

# **O R D E R**

**AND NOW,** this 9th day of August, 2010, upon consideration of the petition for writ of habeas corpus, **IT IS HEREBY ORDERED THAT:**

1. The petition for a writ of habeas corpus is **denied**.

2. A certificate of appealability is **denied**.

3. The Clerk of Court is directed to **close this case**.


S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania